IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

QUENTON V. JONES                                                                      PETITIONER

VS.                              CASE NO. 5:17CV00232 JM/PSH

WENDY KELLEY, Director,
Arkansas Department of Correction                                              RESPONDENT

# FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Petitioner Quenton V. Jones ("Jones") seeks a writ of habeas corpus pursuant to 28 U.S.C. §2254. Jones is currently in the custody of the Arkansas Department of Correction (ADC) after pleading guilty in the Circuit Court of Pulaski County to first-degree murder, attempted first-degree murder, committing a felony with a firearm, and committing the offenses in the presence of a child. The convictions for committing a felony with a firearm and committing the offenses in the presence of a child were enhancements to the first-degree murder conviction. As a result, the sentences for these convictions were required, by statute, to run consecutive to the other sentence. Jones was sentenced to 360 months imprisonment for first-degree murder, and 360 months for attempted first-degree murder, with these sentences to run concurrent. He was sentenced to 120 months for committing a felony with a firearm, and 180 months for committing the offenses in the presence of

a child. All told, Jones was sentenced to 660 months imprisonment.

Because he entered guilty pleas, Jones could not take a direct appeal of the convictions. He filed a timely Rule 37 petition, alleging that trial counsel Ron Davis ("Davis")was ineffective in the following ways: (1) having limited conversations prior to the entry of the plea; (2) failing to provide Jones with discovery; (3) suggesting to Jones that Davis' relationship with the trial judge would secure a minimum or suspended sentence; and (4) failing to inform Jones about the sentencing enhancements which resulted in his receiving consecutive sentences. The trial court, citing *Strickland v. Washington*, 466 U.S. 668 (1984), denied the petition without a hearing, and Jones successfully appealed. *Jones v. State*, 2015 Ark. 119. The Supreme Court of Arkansas held:

> In an appeal from the denial of postconviction relief, this court considers whether, based on the totality of the evidence, the circuit court clearly erred in holding that counsel's performance was not ineffective under the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *See, e.g., Mister v. State,* 2014 Ark. 445, at 1–2, 446 S.W.3d 624, 625. Under *Strickland,* a petitioner raising a claim of ineffective assistance of counsel must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Strickland,* 466 U.S. at 687. A petitioner making an ineffective-assistance-of-counsel claim must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. In doing so, the claimant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 689. Further, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.* at 687. To establish prejudice and prove that he was deprived of a fair trial due to ineffective assistance of counsel, a petitioner who has pleaded guilty must demonstrate a reasonable probability that, but for counsel's errors, the petitioner would not have so pleaded and would have insisted on going to trial. *Buchheit v. State,* 339 Ark. 481, 483, 6 S.W.3d 109, 111 (1999) (per curiam) (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985)).
>
> Here, Jones's petition asserted that had he been better informed about the law and the sentencing enhancements, had he been able to review the discovery material, and had he not relied on his counsel's statements about his ability to persuade the court, he would not have entered his guilty plea and would have gone to trial. Thus, his petition makes specific allegations that Davis's performance was deficient and that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The circuit court, however, considered whether there was a reasonable probability that, but for counsel's error, the fact finder would have had a reasonable doubt respecting guilt, and not, as required by *Hill,* whether there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

> Arkansas Rule of Criminal Procedure 37.3(a) requires an evidentiary hearing in a postconviction proceeding unless the files and records of the case conclusively show that the petitioner is entitled to no relief. *Sparkman v. State,* 373 Ark. 45, 48, 281 S.W.3d 277, 280 (2008). Given that Jones's petition made sufficient allegations to create a question of fact that his counsel's performance was deficient and that the circuit court applied the wrong standard in reviewing Jones's petition, we reverse and remand the case to the circuit court for an evidentiary hearing on Jones's claims.

*Jones v. State*, 2015 Ark. 119, 4–6.

In August of 2015, an evidentiary hearing was conducted pursuant to the instructions of the Supreme Court of Arkansas. Jones, his stepfather, mother, father, and wife testified, as well as Davis. Ivor Gordon ("Gordon"), Jones' co-defendant, also appeared and testified over the objection of the prosecution. Docket entry no. 17, pages 123-269. In October of 2015, the trial court, citing *Hill v. Lockhart*, 474 U.S. 52 (1985), entered an Order denying Rule 37 relief. The Supreme Court of Arkansas affirmed the trial court's decision. *Jones v. State*, 2016 Ark. 304.

> In his federal habeas corpus petition Jones alleges:
>
> (1) He received ineffective assistance of counsel due to Davis' failure to investigate and submit the state's case to an adversarial testing;
>
> (2) Davis coerced him into entering the guilty pleas, using deceit and fraudulent practices;
>
> (3) Constructive denial of counsel;
>
> (4) Denial of right to jury trial;
>
> (5) Lack of adversary process; and
>
> (6) Davis acted under a conflict of interest.[1]

Respondent Wendy Kelley ("Kelley") contends the petition should be dismissed and relief denied. She argues that grounds one and two should be denied because the state court adjudication of those claims is entitled to deference pursuant to 28 U.S.C. § 2254(d). Kelley argues that claims

---

[1] Jones asserted claims 1-5 in his initial habeas corpus petition, and added claim 6 in a supplementary petition. Docket entry no. 11.

three, four, five, and six should be dismissed as they are procedurally barred, waived as a result of Jones' entry of guilty pleas, or because they are restatements of claims one and two.

*Claims One and Two:*

In his Rule 37 proceeding, Jones alleged his attorney was ineffective by failing to adequately investigate the case and by coercing him into entering the guilty pleas. The trial court denied relief. On appeal the Supreme Court of Arkansas affirmed, as follows:

> On October 4, 2013, Jones filed a Rule 37 petition. The petition asserted that, prior to the entry of the plea, Jones's counsel, Ron Davis, had limited conversations with Jones concerning facts and legal issues in the case and that Davis had refused to provide him with discovery materials. Further, Jones alleged that when Davis approached Jones about the plea, he gave Jones the impression that Jones would receive a suspended sentence because of counsel's close relationship with the judge, whom he referred to as his fraternity brother. Additionally, the petition asserted that Davis never informed him about the sentencing enhancements and that he learned that he would face a substantial amount of prison time only after he entered his guilty pleas. The petition also asserted that, but for his counsel's ineffective assistance, he would not have pleaded guilty and would have gone to trial. The circuit court denied Jones's petition without a hearing. Jones appealed and we reversed and remanded the matter to the circuit court for an evidentiary hearing and held that the circuit court had applied the wrong standard to Jones's petition. *Jones v. State*, 2015 Ark. 119, at 6, 2015 WL 3484687. [footnote omitted]
>
> On August 28, 2015, the circuit court conducted a hearing. At the hearing, Jones testified that he would not have entered his plea if he had proper information and proper representation from his counsel, Ron Davis. Jones testified that Davis told Jones that there was "no defense," that the judge was a fraternity brother of Davis's, and that the judge would give Jones the minimum sentence due to Davis's relationship with the judge. Jones further testified that Davis visited him in jail two or three times for short visits. Jones testified that Davis stated that Davis was due a favor from the court, that Jones could get the minimum sentence, and that Davis would work on getting a "couple of years" suspended from his sentence. Jones also testified that the enhancements had not been explained to him and that he believed he would be sentenced to ten years. Jones further testified that Davis failed to investigate witnesses, Ivor Gordon and Edwina Martin. On cross-examination, Jones testified that, in addition to the jail visits, he visited with Davis six times prior to entering his plea and also talked with Davis at the Little Rock Police Department. Jones also testified on cross-examination that although the enhancements were listed on his plea agreement, he consented to the agreement, and he did not ask questions, but he testified that the enhancements were not explained to him. Jones also testified that he was threatened by Ivor Gordon, which was a factor in entering the plea.
>
> Anthony Brown, Jones's stepfather, testified that he had encouraged Jones to take

4

the plea. He further testified that Davis met with the family, and Davis told Brown that he had influence with the judge and that he had additional influence with the judge because Davis's wife was an employee with the police department. On cross-examination, Brown testified that at times it was difficult to reach Davis, that he did not have specific complaints, but rather that Davis did not put on a good defense and did not give Jones information.

Penny Brown, Jones's mother, testified that Davis did not meet with Jones other than for a few scarce visits and testified that Davis was not honest with Jones and his family because the family believed he was not guilty. Brown also testified that Davis opined that there was not a defense for Jones.

Lupion Vernard Jones, Jones's father, testified that he had encouraged Jones to enter the plea agreement. Lupion also testified that he met with Davis at the Joneses' home, and Davis stated that if Jones took the plea, he would probably be out of prison in five to ten years and also stated that he and the judge were fraternity brothers and that the judge was going to go easy on sentences.

Davis, testified that he had been hired by Jones's mother and his stepfather to represent Jones. Davis testified that, prior to Jones entering his plea, he met with Jones approximately seven times, including three occasions where he discussed the specifics of his case, and that he met with Jones's family two or three times. Davis further testified that he explained to Jones and his family that he knew the particular judge, how he knew the judge, and that the judge would be fair and reasonable. Davis further testified that he never indicated that Jones would receive special consideration or a favor because Davis knew the judge. Davis testified that because of the egregious facts in the case—a child witnessing a murder—Davis advised that it was best for Jones to be sentenced by a judge and not a jury. Davis testified that he did not have a special relationship with the judge. Davis further testified that he did not interview Edwina Martin because she did not want to speak with him, and that because codefendant Ivor Gordon was represented by counsel, the Rules of Professional Conduct did not allow him to visit with Gordon.

On cross-examination, Davis testified that he and the judge had been in the same fraternity which is a national organization, and that the two did not attend the same institution. Davis further testified that when he mentioned the specific judge and how he thought the judge would handle the case, he also discussed all of the sitting criminal circuit judges and told the Jones family what the different judges were likely to do in a situation such as Jones's case. Davis testified that, of those circuit court judges, he opined that the judge in Jones's case had demonstrated to him in the past that he was fair in sentencing and explained his opinion to the Jones family. Finally, the record demonstrates that when Jones entered his plea, he stated that he was aware of the terms in the agreement, understood it, and voluntarily entered into the plea agreement.

On October 8, 2015, the circuit court denied Jones's petition. Jones timely appealed and presents one issue on appeal: the circuit court should have granted relief and vacated Jones's convictions.

"On appeal from a trial court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Kemp v. State*, 347 Ark. 52,

55, 60 S.W.3d 404, 406 (2001). A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.*" *Prater v. State*, 2012 Ark. 164, at 8, 402 S.W.3d 68, 74.

"The benchmark for judging a claim of ineffective assistance of counsel must be 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ]." *Henington v. State*, 2012 Ark. 181, at 3–4, 403 S.W.3d 55, 58. Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007).

Finally, "the rule for evaluating ineffective-assistance-of-counsel claims in cases involving guilty pleas appears in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In that case, the Supreme Court held that the 'cause and prejudice' test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applied to challenges to guilty pleas based on ineffective assistance of counsel. The Court further held that in order to show prejudice in the context of a guilty plea, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366. " *Mancia v. State*, 2015 Ark. 115, at 11–12, 459 S.W.3d 259, 268.

I. *Ineffective Assistance of Counsel*

With this standard in mind, we now turn to the issue raised by Jones. Jones asserts that although the circuit court disposed of the issues before it, the court did not analyze the issues in a substantive way and did not make credibility determinations.

At issue is the circuit court's October 8, 2015 order which held in pertinent part,

For a defendant who entered a guilty plea to prevail in a claim of ineffective assistance of counsel, he must establish prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have entered a plea and would have insisted on going to trial. *Scott v. State*, 2012 Ark. 199, 406 S.W.3d 1. A petitioner under rule 37.1 in those proceedings must allege some sort of direct correlation between counsel's deficient behavior and the decision to enter the plea. *Scott*, 2012 Ark. 199, 406 S.W.3d 1. The burden is entirely on the petitioner to provide facts that affirmatively support the claims of prejudice. *Wells v. State*, 2012 Ark. 308, 2012 WL 3364120 (per curiam).

Mr. Jones failed to demonstrate a reasonable probability that, but for counsel's errors, he would not have pleaded and would have insisted on going to trial. *Buchheit v. State*, 339 Ark. 481, 483, 6 S.W.3d 109, 111 (1999)(per curiam)(citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

WHEREFORE, the petition for relief under Rule 37.1 of the Arkansas Rules of

> Criminal Procedure is denied.
>
> Jones asserts that the circuit court erred because "the opinion short-shrifted the most salient issues in Jones's testimony as to reasons for his plea." Jones asserts that Davis and the circuit court judge were fraternity brothers and that one of the reasons Jones entered the guilty plea was because of Davis's misrepresentation and Jones's misunderstanding. Jones asserts that either a misrepresentation or a misunderstanding satisfies ineffective assistance of counsel and urges us to reverse the circuit court. Jones also asserts that the circuit court erred because it did not discuss the testimony of Jones's codefendant, Ivor Gordon, ruling that it was irrelevant.
>
> Here, in reviewing the circuit court's order, Rule 37.3(c) of the Arkansas Rules of Criminal Procedure provides that the court shall determine the issues and make written findings of fact and conclusions of law with respect thereto. Although Jones contends that the circuit court's findings on the issues were inadequate, we hold that the circuit court's findings are adequate for our review. The circuit court addressed the issues and the testimony presented and applied the correct legal standard. The court recounted the allegations, the testimony of Jones, of his family members, and of Davis. *Pigg v. State*, 2016 Ark. 108, at 2, 486 S.W.3d 751, 753. Regarding the credibility of witnesses in postconviction matters, we have explained, "the trial court is in the best position to resolve any conflicts in testimony. *Snelgrove v. State*, 292 Ark. 116, 728 S.W.2d 497 (1987). The judge at a postconviction-relief hearing is not required to believe the testimony of any witness, particularly that of the accused. *Skeels v. State*, 300 Ark. 285, 779 S.W.2d 146 (1989)." *Pardue v. State*, 363 Ark. 567, 571, 215 S.W.3d 650, 654–55 (2005). Here, as in *Pardue*, the circuit court credited Davis's account of events leading up to the guilty plea and held that Jones had not met his burden pursuant to *Strickland*. Jones had the burden to establish not only that counsel performed deficiently but that absent counsel's deficient performance he would not have entered the guilty plea. Jones has failed to meet his burden under this standard, and we affirm the circuit court. *Mancia*, 2015 Ark. 115, at 11–12, 459 S.W.3d at 268.

*Jones v. State*, 2016 Ark. 304, 2–8.

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our

7

> precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

The state court correctly identified the governing federal precedent, as determined by the United States Supreme Court, when it cited *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Given this, Jones must show either, one, his factual scenario mirrors the facts from a Supreme Court decision yet arrives at a contrary result, or two, that the state court cited the correct precedent but applied it in an objectively unreasonable fashion. Jones cites no guilty plea case with similar facts and a contrary result. Further, he does not demonstrate the state court applied the relevant law in an objectively unreasonable way. We have carefully reviewed the transcript of the Rule 37 hearing, the trial court's decision, and the affirming decision of the Supreme Court of Arkansas. These documents show that Jones was faced with a difficult decision. Had he gone to trial and been convicted of capital murder, his sentence would be either death or life imprisonment without the possibility of parole. His co-defendant, Ivor Gordon, was convicted and sentenced to life without parole. Even though Jones did not have a criminal history, as Gordon did, at trial he would have to overcome the eyewitness testimony of Padrick Martin. Davis described Padrick Martin as "one of the strongest child witnesses that I'd ever experienced in my practice because he was unwavering in his identification, somewhat emotional and I thought that that was the absolute straw that broke the camel's back in terms of my analysis of this case." Docket entry no. 17, page 234. The trial court found Davis credible. The Supreme Court of Arkansas applied the correct legal standard and its opinion was not objectively unreasonable.[2] Indeed, the Court was correct in finding that Jones did not shoulder his burden of

---

[2] In addition to the claims raised in state court, Jones tacks on new allegations of failure to investigate. For example, he asserts Davis should have investigated bloody footprints at the crime scene, the statements given by the surviving victim, Gordon, Padrick Martin, and the

demonstrating that but for Davis' alleged constitutionally deficient performance, he would have chosen to go to trial. There is no merit to Jones' claim that his attorney was ineffective for failing to investigate the case and for coercing him to enter guilty pleas.

*Claims 3-6*

Kelley contends these claims are without merit, are procedurally barred, waived as a result of Jones' entry of guilty pleas, or they are restatements of claims one and two. We first address the issue of procedural bar. The basic concept of procedural default is that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court: that is, if he was aware of the ground, but failed to pursue it to a final determination. The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure. *See also, Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir. l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987).

We are mindful that *Martinez v. Ryan*, 566 U.S. 1 (2012) and subsequent cases demonstrate there are exceptions to the general rule of procedural default. We are also aware that the procedural bar analysis need not be performed in every case and are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice standard:
>> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

---

investigating officer. Even if these assertions were made in state court and not subject to procedural default analysis, none of these statements change the basic equation that Jones was positively identified as the shooter by an "unwavering" witness and, absent a guilty plea, could face the death penalty. Docket entry no. 17, page 234. In addition, Jones places too much stock in the notion that Gordon could exonerate him. "Recantation by convicted co-defendants is viewed with a considerable element of skepticism . . ." *Hall v. Lockhart*, 806 F.2d 165, 168 (8th Cir. 1987).

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)). *See also Williams v. Norris*, 612 F.3d 941, 953 (8th Cir. 2010). In this instance, we find it wiser and a better use of judicial resources to forego the procedural default analysis and address the merits of Jones' claims for relief.

Jones' third claim for relief is that he was denied effective counsel when Davis overpowered him "mentally into submission" and caused him to enter the guilty plea. Although the wording is slightly altered, this is clearly another way of stating the argument Jones made in claim two. This claim for relief is without merit for the reasons already provided.

For his fourth claim, Jones alleges Davis overpowered his will and thereby deprived him of his right to a jury trial. Again, this argument is a restatement of the one Jones made in claim two. It is without merit.

Jones' fifth claim for relief is that Davis "subjugated Petitioner into the plea" and therefore denied "his right to submit the State's case to an adversarial testing." Petition, page 19. The absence of an adversarial testing stems from the guilty plea, which we have concluded was not coerced. There is no merit to this claim.

The sixth and final claim is that Davis manipulated Jones into entering the guilty pleas to preserve Davis' own reputation and livelihood. This, according to Jones, amounted to a conflict of interest. We are guided by *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which requires factual allegations of an actual conflict to exist in order to show ineffective assistance of counsel. Here, Jones claims there was tension between himself and Davis. This, however, is far from an actual conflict of interest. Simply, Jones offers no facts to demonstrate that Davis labored under a conflict of interest and was, as a result, ineffective.

In summary, all of Jones' claims are targeted at Davis and his representation, which were adjudicated by the state trial and appellate court. Jones fails to demonstrate the state courts' decisions were defective as defined in 28 U.S.C. § 2254(d)(1), (2). As a result, we recommend

that the petition for writ of habeas corpus be dismissed, and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

DATED this 1st day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE